IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BONNIE L. HILTY, | ) |
|        Plaintiff, | ) Civil Action No. 17-1585 |
| vs. | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) |
|        Defendant. | ) |

AMBROSE, Senior District Judge

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 10 and 15]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 11 and 18]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment [ECF No. 15] and denying Plaintiff's Motion for Summary Judgment. [ECF No. 10].

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI")

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

under Title XVI of the Act. Plaintiff applied for DIB and SSI on or about November 8, 2013. [ECF No. 8-9 (Exs. 1D, 2D)]. In her applications, she alleged that since October 22, 2013, she had been disabled due to bipolar disorder II, anxiety, breast cancer, bladder cancer, joint pain, and depression. [ECF No. 8-10 (Ex. 3E)]. Administrative Law Judge ("ALJ") John A. Fraser held a hearing on March 23, 2016, at which Plaintiff was represented by counsel. [ECF No. 8-3, at 45-80]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 72-79. In a decision dated July 1, 2016, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 8-2, at 20-38]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on October 19, 2017, the Appeals Council denied Plaintiff's request for review. [ECF No.8-2, at 1-3]. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 10 and 15]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails

to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the

national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

### B. WHETHER THE ALJ ERRED IN ASSESSING PLAINTIFF'S RFC

Plaintiff argues that the ALJ erred in assessing Plaintiff's residual functional capacity ("RFC"). Specifically, Plaintiff contends that the ALJ's RFC analysis does not properly take into account the opinion of consultative examiner, Chantal Deines, Psy. D., that Plaintiff has marked limitations on her ability to perform a number of work-related tasks. [ECF No. 11, at 8]. Plaintiff further argues that the ALJ failed to undertake a longitudinal assessment of her mental health treatment records and that those records support the opinions and findings of Dr. Deines. See id. After careful consideration, I disagree.

The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight. 20 C.F.R. §§ 404.1527, 416.927.[2] To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and

---

[2] Although the regulations governing the evaluation of medical evidence were recently amended (and S.S.R. 06-03p concomitantly rescinded), the new version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. §§ 404.1527, 416.927 (2017); 20 C.F.R. §§ 404.1520c, 416.920c (2017).

4

consistent with the other substantial evidence of record. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ may consider a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. §§ 404.1527, 416.927. As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).

Dr. Deines examined Plaintiff on or about March 14, 2014. [ECF No. 8-22 (Ex. 13F)]. Dr. Deines completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on that same date, in which she opined that Plaintiff had moderate restrictions on her ability to understand and remember simple instructions, make judgments on simple work-related decisions, and interact appropriately with supervisors. Id. Dr. Deines further opined that Plaintiff had marked restrictions on her ability to carry out simple instructions; understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public and co-workers; and respond appropriately to

usual work situations and to changes in a routine work setting.  Id.[3]  The ALJ afforded great weight to Dr. Deines's moderate limitations, but gave little weight to the marked limitations because he found that the marked limitations were inconsistent with the objective medical evidence.  [ECF No. 8-2, at 32-33].  The ALJ cited numerous examples of this contradictory evidence in support of his conclusion, including: Dr. Deines's own report stating that Plaintiff was alert and oriented with a clear sensorium, that she was able to complete all tasks of attention and concentration, that she had coherent thought processes with no evidence of hallucinations, delusions, or paranoia, and that her insight and judgment appeared good; a mental status evaluation in January 2014 by examining psychiatrist Dr. Kannan revealing Plaintiff to be alert and oriented with coherent and logical thoughts and no evidence of psychosis; and September 2015 and April 2016 records by treating psychiatrist Dr. Gatumu that Plaintiff was cooperative and alert and had normal attention span and ability to concentrate, and that she was able to recall recent and remote events.  Id. (citing Exs. 13F, 22F, 26F, 32F).  The ALJ also noted that Plaintiff's work activity since November 2014 was inconsistent with the marked limitations set forth by Dr. Deines.[4]  Id.  The ALJ's assessment of the cited evidence is accurate, and his stated reasons for discounting Dr. Deines's opinion are appropriate.[5]  See 20 C.F.R. §§ 404.1527;

---

[3] The Medical Source Statement form defines "moderate" as "more than a slight limitation in this area but the individual is still able to function satisfactorily," and defines "marked" as "serious limitation in this area" with "a substantial loss in the ability to effectively function."  [ECF No. 8-22 (Ex. 13F)].

[4] Plaintiff reported that she worked as a pricer for the Salvation Army from November 2014 through September 2015 and that, as of the time of the hearing, had been working on a part-time basis as a home health aide since September 2015 notwithstanding her condition.  [ECF No. 8-2, at 23, 31 (citing Ex. 14E and Testimony)].  Plaintiff's average monthly earnings, however, did not exceed the threshold amount for determining substantial gainful activity, and, therefore, the work activity did not rise to the level of substantial gainful activity.  Id. at 23 (citing Exs. 7D-10D).

[5] Elsewhere in his opinion, the ALJ further noted that Dr. Deines's March 2014 report described Plaintiff as appropriately attired and reasonably well-groomed; and that Plaintiff reported she was able to drive, cook, do laundry, and perform other light chores.  See ECF No. 8-2 at 31 (citing Ex. 13F).

416.927. Accordingly, I find no error in this regard.

Plaintiff's additional arguments as to this issue are unpersuasive. As an initial matter, to the extent Plaintiff points to her mental health records and hospitalization history as support for Dr. Deines's opinion, she misses the mark. The applicable standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's findings. See Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). As courts have explained:

> [The] question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's finding. . . . Substantial evidence could support both Plaintiff's claims and the ALJ's finding because substantial evidence is less than a preponderance. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).

Hundley v. Colvin, Civil Action No. 16-153, 2016 WL 6647913, at *2 (W.D. Pa. Nov. 10, 2016). As shown above, the medical evidence does not, as Plaintiff asserts, unequivocally support Dr. Deines's opinion; rather, substantial evidence, including evidence from Plaintiff's treating physicians, supports the ALJ's evaluation of Dr. Deines's report. Plaintiff's further argument that the ALJ failed to undertake a longitudinal assessment of the records of her treating mental health providers is likewise without merit. Contrary to Plaintiff's assertions, the ALJ thoroughly reviewed Plaintiff's mental health treatment history over the course of his 18-page opinion, including, inter alia, citation to and/or discussion of: the treatment records of treating psychiatrist Dr. Gatumu, as well as other records from Neuropsychiatric Associates; Dr. Kannan's mental status evaluation and other records from Community Guidance Center; Plaintiff's medication history related to her mental health impairments; Plaintiff's GAF scores; and Plaintiff's hospitalization history and associated records. See ECF No. 8-2, at 20-38 (citing, inter alia, Exs. 11E, 6F, 9F, 18F, 19F,

20F, 22F, 26F, 28F, 29F, 31F, 32F). Again, Plaintiff's mere disagreement with the ALJ's assessment is of no moment, where, as here, substantial evidence supports the ALJ's conclusions.

Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1527(d); 404.1546; 416:927(d); 416.946. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Here, the ALJ did not discount Plaintiff's symptoms entirely and included restrictions in his RFC finding related to Plaintiff's credibly-established mental health impairments, including, inter alia, a limitation to understanding, remembering, and carrying out simple instructions; tolerating one or two changes per week in an otherwise stable work routine; occasional interaction with supervisors and coworkers; and no public contact on behalf of the employer.[6] [ECF No. 8-2, at 27-28]. As set forth above, the ALJ supported this RFC finding with substantial evidence, including, inter alia, Plaintiff's treatment records; medical opinion evidence;[7] medication history; work history; hearing testimony; and activities of daily living. See id. at 21-26 (citing, inter alia, Exs. 3A, 4A, 2F, 4F, 5F, 8F, 9F, 10F, 11F, 12F, 13F, 16F, 17F, 20F-26F, 28F, 30F and Hearing Testimony).

Because the ALJ properly evaluated the medical opinion evidence and generously accounted for Plaintiff's limitations established by substantial evidence of record, I find that he did

---

[6] The ALJ also included hazard and vehicle operation limitations to accommodate Plaintiff's alleged balance and concentration problems. [ECF No. 8-2, at 27-28, 36]. Additionally, although the ALJ gave little weight to the marked restrictions in Dr. Deines's opinion, the RFC nevertheless accommodates many of them. For example, the RFC does not require Plaintiff to deal with complex work-related decisions or instructions or to interact with the public.

[7] In addition to evaluating Dr. Deines's report and opinion and the treating mental health records, the ALJ considered and gave great weight to the March 21, 2014 opinion of state agency psychological consultant, Kerry Brace, Psy. D., that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her mental health impairments. See ECF No. 8-2, at 35 (citing Exs. 2A, 4A).

not err in formulating Plaintiff's RFC.  Accordingly, there is no basis for remand on this issue.

## C. WHETHER THE ALJ ERRED IN FINDING THAT PLAINTIFF'S IMPAIRMENTS DID NOT MEET OR EQUAL A LISTED IMPAIRMENT

Plaintiff takes issue with the ALJ's findings at step three of the analysis that she does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment, submitting that her mental health impairments meet the criteria of Listing 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders). [ECF No. 11, at 9]. After careful consideration, I disagree.

In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. Burnett v. Comm'r, 220 F.3d 112, 119 (3d Cir. 2000).

Affective Disorders under the applicable version of Listing 12.04 are characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. The required level of severity for these disorders is met when the requirements in both A and B of the Listing are satisfied, or when the requirements in part C of the Listing are satisfied. Thus, to fall within the listed impairment of section 12.04 (Affective Disorders), a plaintiff must show:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
>    a. Anhedonia or pervasive loss of interest in almost all activities; or
>
>    b. Appetite disturbance with change in weight; or
>
>    c. Sleep disturbance; or
>
>    d. Psychomotor agitation or retardation; or
>
>    e. Decreased energy; or

    f. Feelings of guilt or worthlessness; or

    g. Difficulty concentrating or thinking; or

    h. Thoughts of suicide; or

    i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

    a. Hyperactivity; or

    b. Pressure of speech; or

    c. Flight of ideas; or

    d. Inflated self-esteem; or

    e. Decreased need for sleep; or

    f. Easy distractibility; or

    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

    h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04 (2016).

As to Anxiety-Related Disorders under the applicable version of Listing 12.06, anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied. Thus, to fall within the listed impairment of section 12.06, a claimant must show:

> A. Medically documented findings of at least one of the following:
>
> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
> a. Motor tension; or
> b. Autonomic hyperactivity; or
> c. Apprehensive expectation; or
> d. Vigilance and scanning; or
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
>
> AND
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.
>
> OR

> C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06 (2016).

Even assuming (as did the ALJ) that Plaintiff's mental impairments satisfy the "A" criteria of the listings, the ALJ concluded that those impairments do not satisfy the "B" criteria (which are identical in both listings). [ECF No. 8-2, at 25-27]. Specifically, the ALJ found that Plaintiff did not have marked limitations in any of the requisite areas. Rather, the evidence demonstrated only mild restriction in the activities of daily living and moderate difficulties with regard to social functioning and concentration, persistence or pace. Id. The ALJ also found no evidence that Plaintiff had ever had an episode of decompensation of extended duration. Id. In conclusory fashion, Plaintiff argues that "all" of the medical evidence of record, including treating source records and Dr. Deines's opinion, supports a finding that she meets both Listings 12.04 and 12.06 and that "there is absolutely no medical evidence" to support the ALJ's findings that Plaintiff experiences only "mild" limitations in her activities of daily living and "moderate" limitations as to social functioning and concentration, persistence, and pace. I disagree.

Contrary to Plaintiff's assertions, substantial record evidence supports the ALJ's careful analysis and findings in this regard. For example, with respect to activities of daily living, Plaintiff reported that she lives alone, is able to care for the majority of her personal needs independently, drive, prepare meals, do laundry, wash dishes, pay bills, and grocery shop. [ECF No. 8-2, at 25-26 (citing Ex. 6E and Hearing Testimony)]. The ALJ also cited Dr. Deines's report which stated that Plaintiff was appropriately attired and reasonably well-groomed and that she self-reportedly was able to drive, cook, do laundry, and perform other light chores. Id. (citing Ex. 13F). He further pointed to treatment records also describing Plaintiff as well-nourished and well-groomed. Id. (citing Exs. 31F, 32F). With respect to social functioning, the ALJ cited Plaintiff's testimony,

Dr. Deines's report, and treatment records showing, inter alia, that Plaintiff indicated that she has no difficulty getting along with others and that she has never been fired or laid off from a job due to problems getting along with others; that she has no history of legal problems and is able to drive and socialize with her sisters; that she was able to articulate well and was cooperative with good eye contact and spontaneous speech during treatment appointments; and that she demonstrated appropriate social behavior at the hearing. Id. (citing Exs. 6E, 13F, 26F, 31F, and Testimony). The ALJ also cited Plaintiff's work history, noting that she worked at the Salvation Army from November 2014-September 2015 and had been working as a part-time home health aide since September 2015 notwithstanding her condition. Id. at 26. Regarding concentration, persistence, and pace, the ALJ again cited Plaintiff's work history, Dr. Deines's report, Dr. Gatumu's treatment records, other treatment records, and Plaintiff's ability to concentrate at the hearing as support for his finding of moderate limitations. Id. (citing Exs. 14E, 13F, 31F, 32F and Testimony). He also cited Plaintiff's self-reported ability to drive, pay bills, count change, handle a savings account, and use a checkbook/money order. Id. (citing Ex. 6E and Testimony). In short, it is evident from the ALJ's opinion that he reviewed the medical records and other record evidence and appropriately supported his conclusion that Plaintiff did not meet or medically equal the requirements of Part B of the Listings at issue.

Plaintiff further contends that it was error for the ALJ to conclude that her hospitalizations did not qualify as episodes of decompensation, each of an extended duration. [ECF No. 11, at 9]. This argument is likewise without merit. The ALJ did not ignore the evidence that Plaintiff had been hospitalized on multiple occasions due to her condition, the most recent occurring in March 2016. He correctly noted, however, that each of these hospitalizations lasted for a period of less than two weeks and that Plaintiff was stable at the time of her most recent discharge.

[ECF No. 8-2, at 26 (citing Exs. 6F, 18F, 19F, 20F, 28F, 29F)]. As Defendant correctly explains, the applicable regulations define "repeated episodes of decompensation, each of extended duration" as "three episodes within 1 year, or an average of once every 4 months, *each lasting for at least 2 weeks.*" [ECF No. 18, at 21 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4) (2016) (emphasis added))]. Plaintiff does not dispute that her hospitalizations do not meet this definition and does not cite any authority supporting her vague and conclusory assertion that those periods nevertheless qualify as "repeated episodes of decompensation, each of extended duration" in this case. Moreover, and in any event, even if Plaintiff's hospitalizations could be construed as satisfying the listings at issue, her argument still fails because, as discussed above, the ALJ did not find that she had a "marked" limitation in one of the other three "paragraph B" criteria.

For all of these reasons, I find the ALJ's conclusion that Plaintiff's impairments do not meet the criteria set forth in Listings 12.04 and 12.06 to be supported by substantial evidence in the record. Accordingly, remand is not warranted on this issue.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BONNIE L. HILTY,

        Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

        Defendant.

Civil Action No. 17-1585

AMBROSE, Senior District Judge

**ORDER OF COURT**

AND NOW, this 27th day of February, 2019, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment [ECF No. 10] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 15] is GRANTED.

        BY THE COURT:

        /s/ Donetta W. Ambrose
        Donetta W. Ambrose
        U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).